LAURA A. BARROWS *v.* ROENA L. DUGAN'S ESTATE.

November Term, 1914.

Present: POWERS, C. J., MUNSON, WATSON, HASELTON, and TAYLOR, JJ.

Opinion filed January 16, 1915.

*Husband and Wife—Capacity of Wife to Contract—Her Separate Property—Claims Against Her Estate.*

Under P. S. 3037, a married woman can make any contract with any person other than her husband, and bind herself and her separate estate in the same manner, and to the same extent as if she were unmarried, excepting contracts relating to her property in which her husband has marital rights, and excepting that, because of P. S. 3039, she can become surety for her husband's debts only by way of mortgage, and cannot convey or mortgage her real estate except by deed duly executed by herself and her husband, and her capacity to make a contract does not depend on her holding property to her sole and separate use; so that after her death contract obligations may be proved and allowed against her estate in the same manner as if she were unmarried at the time of contracting the liability, and without any showing that she had separate property and that the avails of the contracts went to the benefit of such property, or to her benefit on the credit of such property.

APPEAL from the disallowance by the commissioners on the estate of Roena L. Dugan's estate of a claim presented by Laura A. Barrows. Declaration, general assumpsit. Plea, the general issue. Trial by jury at the June Term, 1914, Windsor County, *Slack,* J., presiding. At the conclusion of the evidence, both parties agreed that there was no question for the jury, and thereupon the court rendered judgment disallowing plaintiff's claim, to which the plaintiff excepted. The opinion states the case.

*Davis & Davis* for the plaintiff.

*William Batchelder* for the defendant.

WATSON, J.  The claim in question is for services rendered by the claimant in caring for the intestate within her last sickness, under a contract entered into by the latter, whereby she promised to pay therefor.  At the time the contract was made and the services performed, the intestate was a married woman, and substantially all the property she then owned was the farm on which she and her husband then lived.  She did not hold this real estate to her sole and separate use, and therefore her husband had marital rights therein; nor does the record show that she held any separate property.  She died, the husband surviving her.  The claim was presented for allowance against her estate, and the matter being heard in the county court on appeal the claim was disallowed on defendant's objection that, since the intestate was a married woman without separate property when the contract was made, she was incapable of making the contract upon which the claim is based.  Thus the question is presented whether, under the statute, the capacity of a married woman to make a contract with a person not her husband, depends upon her holding property to her sole and separate use.

By P. S. 3037, "A married woman may make contracts with any person other than her husband, and bind herself and her separate property, in the same manner as if she were unmarried, and may sue and be sued as to all such contracts made by her, either before or during coverture, without her husband being joined in the action as plaintiff or defendant, and execution may issue against her, and be levied on her sole and separate goods, chattels and estate."  And by section 3039, "A married woman shall not become surety for her husband's debt except by way of mortgage, and shall not convey or mortgage her real estate except by deed duly executed by herself and husband."

The law of these sections was enacted as a part of No. 140, Laws of 1884, and divers cases, involving some features of it, have been before this Court for determination.  In *Reed* v. *Newcomb,* 59 Vt. 630, 10 Atl. 593, the action was general assumpsit against husband and wife, and the questions presented were on general demurrer to the declaration.  It was held that the Act of 1884 gives a married woman power to make contracts with any person other than her husband, and to bind herself and her separate estate in the same manner as if she were unmarried; that this law removes the incapacity of a married woman to contract, and permits her to make contracts in the same manner and

to the same extent as a *feme sole,* except with her husband, and enforces them; and that this power so given her to contract with persons, not her husband, is unrestricted. The demurrer was overruled, and the declaration adjudged sufficient. In *Lane* v. *Bishop & Co.,* 65 Vt. 575, 27 Atl. 499, the action was book account against husband and wife, doing business as partners in running a hotel. It is there said that the Act of 1884 received construction in *Reed* v. *Newcomb,* and the court quotes with approval from that case showing the construction given to be as stated above. But this construction was subsequently modified. In *Hubbard* v. *Hubbard,* 77 Vt. 73, 58 Atl. 969, 67 L. R. A. 969, 107 Am. St. Rep. 749, it was held that as to the lands of a married woman, except such as she holds to her sole and separate use, we are still living under the common law rule which gives the husband a freehold estate therein, entitling him to the rents and profits; that this estate is recognized and protected by statute, the wife being unable to convey or mortgage her lands except by deed duly executed by herself and her husband; and that the husband can not be deprived of his freehold estate without due process of law. These holdings in the case last named have since been followed in *Dietrich* v. *Hutchinson,* 81 Vt. 160, 69 Atl. 661, and in *Rowley* v. *Shepardson and wife,* 83 Vt. 167, 74 Atl. 1002. In the Dietrich case it was held that as to the real estate of a married woman, not held to her sole and separate use, she can not deprive her husband of his marital rights without his consent, not even by statutory authority; and in the Rowley case, where the action was for deceit in the sale of a farm, the title ·to which stood in the name of the defendant wife, the plaintiffs' evidence tended to show that in the negotiations for the purchase of the farm the defendant husband, in the absence of his wife, made certain false representations concerning the number of sugar maple trees standing on the farm, upon which representations the plaintiffs relied in making the purchase. In admitting this evidence, the court below ruled in effect that as the property stood in the name of the wife and was conveyed by the joint deed of herself and her husband, and the consideration ran to her and to him as far as he had a marital interest, she adopted the representations made. by him culminating in the deed; to which ruling an exception was saved. In disposing of the question this Court said: "It fairly appears from the record that the farm in question was not the wife's separate

property, and therefore the responsibility is to be measured, not by the statute enlarging the powers of married women, (P. S. 3037,) but by the common law. There was evidence tending to show that Mrs. Shepardson had given her husband full authority to transact this business in her behalf; and beyond this, assuming the evidence to be as strong as the plaintiff's claim: that she with knowledge of the representations made by her husband in negotiating the sale accepted and appropriated the whole or a part of the consideration money and thereby ratified the sale as made, yet she is not liable at common law for the tort, it being based upon her contract, and not a tort *simpliciter* * * * * For at common law a married woman cannot personally nor by her agent make a contract which will bind her so that a judgment upon it can be rendered against her person.'' See also *First Nat. Bank* v. *Bertoli,* 87 Vt. 297, 89 Atl. 359.

Thus the result of the holdings is, that by statute (P. S. 3037) a married woman has the unrestricted power to make contracts in the same manner and to the same extent as a *feme sole*, excepting with her husband and also excepting contracts relating to her property in which her husband has marital rights, and bind herself and her separate estate in the same manner as if she were unmarried, and that she may sue and be sued as to all such contracts made by her either before or during coverture. The result here stated must be considered as having no reference to her contract as surety for her husband's debts, concerning which the statute contains a specific provision. That question was recently before the Court in *First Nat. Bank* v. *Bertoli,* cited above.

It follows that the contention of the defendant that the test of liability on the part of the estate is, whether the debt went to the benefit of the intestate's separate property, or for her benefit on the credit of such property, and that such property must be shown by the plaintiff in making out her case, cannot be sustained. The claim is to be proved against the estate and allowed (when proved) in the same manner as if the intestate were unmarried at the time of creating the liability, (see *Russell* v. *Phelps,* 73 Vt. 390, 50 Atl. 1101; *Ainger* v. *White's Admrx.,* 85 Vt. 446, 82 Atl. 666), but whether there is any estate out of which the debts proved can be paid, is a question not before us.

It was conceded by defendant's attorney at the trial below that if the plaintiff can recover, she is entitled to the amount of her specifications. The disallowance of the claim on the ground

stated, was error.   Judgment should have been rendered in favor of the plaintiff for the amount of her claim and costs; and in view of the concession stated, final judgment will be rendered here.

*Judgment reversed, and judgment for the plaintiff to recover the amount of her specifications with interest, and costs. To be certified to the probate court.*